UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| RONALD WALKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 13-3153 |
| | ) | |
| GREGG SCOTT, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**<u>SUMMARY JUDGMENT OPINION</u>**

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff, proceeding pro se and civilly committed at Rushville Treatment and Detention Facility, brought the present lawsuit pursuant to the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1, and 42 U.S.C. § 1983 based upon the refusal to provide Plaintiff with a diet that complied with his religious beliefs.  The matter comes before the Court for ruling on the Defendants' respective motions for summary judgment (Docs. 26, 28).

**LEGAL STANDARD**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fᴇᴅ. R. Cɪᴠ. P. 56(a).  All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor.  Ogden v. Atterholt, 606 F.3d 355, 358 (7th Cir. 2010). The party moving for summary judgment must show the lack of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## FACTS

Plaintiff is civilly committed at Rushville Treatment and Detention Facility ("Rushville" or "TDF"), and has been a member of the Islamic faith since 1987.  As a Muslim, Plaintiff believes that he is "required to eat all of the things God commands [him] to eat."  Pl. Dep. 58:1-4.  This includes, among other things, meat prepared in accordance with Islamic law, and the avoidance of certain foods,

including pork, foods contaminated with pork, and processed food products.  Foods that meet these requirements are referred to as "Halal."

Plaintiff made several requests to be served a Halal diet to comply with the requirements of his faith.  In the alternative, Plaintiff requested the Kosher diet served to Jewish residents as, according to his interpretation of the Koran and his own inquiry into the diet served at Rushville, Kosher and Halal diets were similar in both the types of foods allowed and the manner in which they are prepared.  These requests were denied on the following basis:  "[Defendant] Billingsley [the Religious Coordinator] has spoken with several religious coordinators from other facilities and they indicate that the Kosher diet . . . [is] a direct violation of the Koran.  The lacto vegan diet is what [Muslim inmates] receive in [the Illinois Department of Corrections]."  (Doc. 29-5).  Accordingly, Plaintiff was given a choice between being served the standard diet, which included those foods proscribed by Plaintiff's religious beliefs; and the lacto-ovo vegan or vegetarian diet ("vegetarian diet"), which lacks foods Plaintiff believes he is required to eat (Halal meat).

Plaintiff's requests for a Kosher diet were denied because he does not identify as a member of the Jewish faith.  (Doc. 29-7).

## ANALYSIS

### I.     Religious Land Use and Institutionalized Persons Act

The Religious Land Use and Institutionalized Persons Act ("RLUIPA") prohibits governmental imposition of a "substantial burden on the religious exercise" of a prisoner, even if the burden results from a rule of general applicability, unless the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000cc–1(a).  In establishing a claim under RLUIPA, the plaintiff bears the initial burden of showing (1) that he seeks to engage in an exercise of religion; and, (2) that the challenged practice substantially burdens that exercise of religion. Id. § 2000cc–2(b).  Once the plaintiff establishes this prima facie case, the defendants "bear the burden of persuasion on any [other] element of the claim," id., namely whether their practice "is the least restrictive means of furthering a compelling governmental interest."  Koger v. Bryan, 523 F.3d 789, 796 (7th Cir. 2008) (quoting Lovelace v. Lee, 472 F.3d 174, 186 (4th Cir. 2006)).

Observance of dietary guidelines outlined in religious scripture is an exercise of religion as defined by the Act.  See 42 U.S.C. § 2000cc-5(7)(A) ("'Religious exercise' includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief."); see Schlemm v. Wall, 784 F.3d 362, 364 (7th Cir. 2015) (request for specific foods was religious in nature).  Therefore, Plaintiff has satisfied the first prong.

RLUIPA does not define "substantial burden," but recent Supreme Court decisions frame the relevant inquiry as whether the inmate was required to "engage in conduct that seriously violates his religious beliefs," regardless of whether alternative means of worship were available.  Holt v. Hobbs, --- U.S. ---, 135 S. Ct. 853, 862 (2015) (quoting Burwell v. Hobby Lobby Stores, Inc., 573 U.S. ---, ---, 134 S. Ct. 2751, 2775 (2014)); see Schlemm, 784 F.3d at 364 (applying the Holt and Hobby Lobby standards).  In so ruling, the Supreme Court "articulate[d] a standard much easier to satisfy" than the longstanding jurisprudence interpreting RLUIPA in light of a prisoner's First Amendment rights.[1]  Schlemm, 784 F.3d at 364.

---

[1] Prior to the Supreme Court's decisions in Holt and Hobby Lobby, courts interpreted "substantial burden" for RLUIPA purposes as "one that necessarily bears direct, primary, and fundamental responsibility for rendering religious

Under Holt and Hobby Lobby, the availability of other diets or an ability to purchase food items at the commissary bears no weight in determining whether Rushville's denial of a specific diet placed a substantial burden upon religious exercise in the RLUIPA context; rather, the question is what effect, if any, the denial had upon Plaintiff's religious beliefs.

No specific policy has been provided or referenced by the parties.  From the record, the Court can infer that a Rushville policy exists, either formally or in practice, that (1) offers Muslim residents a choice between receiving the standard diet, or the vegetarian diet to accommodate their religious practices, and (2) restricts the availability of a Kosher diet solely to those residents who identify with the Jewish faith.  See (Doc. 29-9) ("Your choice will be regular or lacto-vegan as a Muslim."); (Doc. 29-7) ("No Kosher.  Kosher is for Jewish belief.").  As a result, Plaintiff was forced to either do without a food he sincerely believed he was required to eat (Halal meat); or, eat around foods that did not comply with his religious faith (e.g. processed foods like "turkey ham").  The common thread

---

exercise...effectively impracticable."  Schlemm, 784 F.3d at 364; see also Nelson v. Miller, 570 F.3d 868, 876 (7th Cir. 2009) (RLUIPA has been "interpreted with reference to Supreme Court free exercise jurisprudence.").

between these choices, however, presents another concern: both are prepared in Rushville's kitchen.  Defendants do not dispute Plaintiff's contention that food at Rushville is often prepared in a manner inconsistent with his religious beliefs.  <u>See</u> Pl. Dep. 22:3-17 (noting that other meat is often fried in the same grease as pork products, or grilled on the same grills).  Nor do the Defendants dispute that Kosher meals are not.  Pl. Dep. 24:22-24 ("Most of the Kosher diets I have seen here comes in sealed packages...that cannot be contaminated.").  Instead, they are prepackaged and delivered to the facility, presumably to comply with the food preparation requirements of a Kosher diet.  If Plaintiff's religious beliefs are consistent with the tenets of Judaism insofar as they relate to food preparation, and Kosher meals cannot be prepared at Rushville without violating religious law, then no meal option chosen would be an accommodation of Plaintiff's religious beliefs so long as the food was prepared in Rushville's kitchen.  In addition, Plaintiff's argument that Halal and Kosher diets are similar is supported both by documents provided by the Defendants and Seventh Circuit precedent.  <u>See</u> (Doc. 27-3 at 1-2) (noting that the lacto-ovo vegetarian and vegan diets "may be applicable for Halal,

Kosher, and/or other religious types….”); <u>Hunafa v. Murphy</u>, 907

F.2d 46, 47 (7th Cir. 1990) (“Eating pork is contrary to the tenets of

Islam (as of orthodox Judaism).”).  Therefore, the Court finds that a

reasonable juror could conclude that the denial of a Halal or Kosher

diet placed a substantial burden on Plaintiff’s religious exercise.

Because Plaintiff has satisfied his initial burden, the burden

shifts to the government to show that the policy in question was the

least restrictive means to further a compelling government interest.

<u>Koger</u>, 523 F.3d at 796.  “Context matters” in the application of the

“compelling government interest” standard, and courts must afford

“due deference to the experience and expertise of prison and jail

administrators in establishing necessary regulations and

procedures…consistent with consideration of costs and limited

resources.”  <u>Cutter v. Wilkinson</u>, 544 U.S. 709, 723 (2005).  This

deference, however, “does not extend so far that prison officials may

declare a compelling interest by fiat.”  <u>Holt</u>, 135 S. Ct. at 867

(Sotomayor, J., concurring) (internal quotations omitted).  As

RLUIPA applies to all institutionalized persons “in which the

government exerts a degree of control unparalleled in civilian

society,” <u>Cutter</u>, 544 U.S. at 720, Rushville officials are afforded the

same deference.  Defendants, however, have presented no argument or evidence regarding a compelling government interest the policy seeks to advance, much less that the denial of a Halal diet was the least restrictive means of doing so. Therefore, the Court finds that the Defendants have failed to meet their burdens with respect to the showings required under RLUIPA.

## II.    First Amendment Claims

Plaintiff also asserts a claim under 42 U.S.C. § 1983, alleging violations of his First Amendment rights.  As RLUIPA provides broader protections, the Seventh Circuit has declined to discuss an inmate's constitutional claims where RLUIPA was found to apply. See Schlemm, 764 F.3d at 363 (bypassing prisoner's constitutional claims because RLUIPA provides greater protection); Borzych v. Frank, 439 F.3d 388, 390 (7th Cir. 2006) (declining to consider a prisoner's constitutional claims, and considering solely his RLUIPA claim after noting the heightened protection it offers); Koger, 523 F.3d at 801 (declining to consider a prisoner's constitutional claims where RLUIPA was found to apply).  In so holding, the Seventh Circuit espoused the longstanding principle that "federal courts are supposed to do what they can to avoid making constitutional

decisions, and strive doubly to avoid making unnecessary constitutional decisions." Koger, 523 F.3d at 801 (internal citations omitted).  Under this line of reasoning, "[b]ecause the prison officials are liable under RLUIPA for the conduct complained of in the constitutional claims," discussion of the constitutional claims is unnecessary.  Id.

The policies in Schlemm and Borzych, however, are distinguishable from the present case as the plaintiffs in those cases sought accommodation insofar as their respective religious practices conflicted with generally applicable prison rules.  See Schlemm, 784 F.3d at 363 (prisoner denied venison for a religious feast because prison rules restricted prison foods to those inspected by the United States Department of Agriculture (USDA), and did not permit inmates to choose their own menu); Borzych, 439 F.3d at 390-91 (inmate denied several books he claimed were necessary to practice Odinism as a prison rule prohibited books that promoted racial violence).   In those cases, constitutional discussion would have been unnecessary as the Free Exercise Clause does not inhibit the enforcement of such rules, despite their incidental effects on religious practice.  See Cutter, 544 U.S. at 714.

Moreover, cases decided subsequent to <u>Koger</u> held that
RLUIPA does not allow a plaintiff to recover monetary damages
against state officials in their official capacities, <u>Sossamon v. Texas</u>,
--- U.S. ---, 131 S. Ct. 1651, 1663 (2011) (holding that States do not
consent to waiver of their sovereign immunity to private suits for
money damages under RLUIPA); nor does RLUIPA allow for a
damages against prison officials acting in their individual
capacities.  <u>Nelson</u>, 570 F.3d at 889.  In light of these decisions, if
this Court were to interpret the <u>Schlemm</u> and <u>Borzych</u> decisions as
an absolute preclusion of First Amendment claims in all cases
where RLUIPA applies, then an institutionalized plaintiff would
never be able to recover monetary damages against a state actor in
cases where the policy or regulation in question directly targets and
restricts an exercise of religious faith.  In effect, a state official could
promulgate religiously discriminatory rules with impunity and enjoy
absolute immunity from monetary damages in his individual
capacity so long as injunctive relief under RLUIPA remained
available to the plaintiff.[2]  Construed in a light most favorable to the

---

[2] The Seventh Circuit has limited its discussion of constitutional claims to
situations where relief under RLUIPA is moot.  <u>See</u> <u>Grayson v. Schuler</u>, 666
F.3d 450, 451 (7th Cir. 2012) (addressing constitutional claims where relief

Plaintiff, Rushville's food policy, or practice as it may be, seeks to restrict religiously motivated activity.  In the absence of any evidence that Rushville sought to enforce a neutral rule of general applicability, the Court finds that the applicability of RLUIPA to this case does not render constitutional discussion unnecessary.

The Free Exercise Clause of the First Amendment prohibits government-imposed burdens upon an individual's religious practice.  A government regulation creates a substantial burden under the First Amendment when it "necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable."  Civil Liberties for Urban Believers v. City of Chicago, 342 F.3d 752, 760-61 (7th Cir. 2003). In the context of religious diets, a substantial burden exists where a regulation "forces [an incarcerated individual] to choose between his religious practice and adequate nutrition."  Nelson, 570 F.3d at 879.  While Defendants argue that the denial of meat to Plaintiff does not create a substantial burden on Plaintiff's religious practice,

under RLUIPA was moot because the plaintiff had been released from prison); Vinning-El v. Evans, 657 F.3d 591, 592 (7th Cir. 2011) (after transfer to another prison, RLUIPA claims were moot and damages under § 1983 were only potential relief); Nelson, 570 F.3d at 882-83 (remanding constitutional claims where issue of injunctive relief was moot because prison officials had since accommodated inmate's request).

there is no question that an institution's failure to ensure that pork is kept separate from other foods places a substantial burden on a practicing Muslim.  See Hunafa, 907 F.2d at 47.  Therefore, the Court finds that a reasonable juror could find that Plaintiff's religious practice was substantially burdened.

Unlike the RLUIPA analysis, any restriction on Plaintiff's ability to practice his religion need only be "reasonably related to a legitimate penological interest."  Cf. Ortiz v. Downey, 561 F.3d 664, 669 (7th Cir. 2009) (citing Turner v. Safley, 482 U.S. 78, 89 (1987)). In determining the constitutionality of a restriction, a court must consider four factors:  "(1) whether the restriction is rationally related to a legitimate and neutral government objective; (2) whether there are alternative means of exercising the right that remain open to the inmate; (3) what impact an accommodation of the asserted right will have on [staff] and other [residents]; and, (4) whether there are obvious alternatives to the [restriction] that show that it is an exaggerated response to [penological] concerns."  Id. (citing Lindell v. Frank, 377 F.3d 655, 657 (7th Cir. 2004)).

Defendants have provided no evidence of a neutral government objective.  The choices offered Plaintiff do not allow for alternative

means of religious dietary practice, and the Defendants have offered

no evidence that an accommodation would have a negative impact

on other residents or staff.  Legitimate penological concerns may

exist for the denial of a Halal or Kosher meal, but with no evidence

in the record to that effect at this stage of the proceedings, the

Court cannot conclude that the restrictions imposed on Plaintiff

were rationally related to legitimate ends.

Ultimately, Plaintiff may not be able to prove damages at trial,

but for now, the Court cannot say that the Defendants have met

their burden for summary judgment with respect to Plaintiff's First

Amendment claims.  Therefore, the Defendants' Motion for

Summary Judgment is denied on these claims.

### III.  Proper Defendants

As injunctive relief is the sole remedy available to a plaintiff

under RLUIPA, the proper defendants are those with the

responsibility to ensure that such relief is carried out, regardless of

whether a particular defendant personally participated in the

alleged statutory or constitutional violations.  Gonzalez v.

Feinerman, 663 F.3d 311, 315 (7th Cir. 2011).  Accordingly,

Defendants Scott, Billingsley, Blaesing, and Houzenga shall remain

defendants in their official capacities for purposes of injunctive relief, as shall Defendant Dredge, the Food Service Supervisor. There is no evidence, however, that Defendant Winters, as a Security Specialist, would have control over the food service at the TDF. Therefore, Defendant Winters will be dismissed.

With regards to Plaintiff's § 1983 claims, "[s]ection 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." Vance v. Peters, 97 F.3d 987, 991 (7th Cir. 1996) (citations omitted). A plaintiff must show that each official, "though the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). A government official may not be held liable under § 1983 on a theory of respondeat superior, that is, for the unconstitutional acts of his or her subordinates. Id. To be held liable, a government supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye…." Vance, 97 F.3d at 993 (quoting Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995)). Defendants Billingsley, Blaesing, and Houzenga played some role in denying Plaintiff a Halal or Kosher diet and, therefore,

are proper defendants under § 1983.  Despite the fact that
Defendants Scott and Winters may have received grievances or
requests from Plaintiff regarding this issue, there is no evidence
that their involvement went beyond those actions.  Therefore,
Defendants Scott and Winters will be dismissed in their individual
capacities.  See George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007)
(participation in the administrative process does not impose liability
under § 1983).

Finally, Defendant Dredge argues that he is not a state actor
under § 1983 because he is not a state employee; rather, he is an
employee of the company that contracted with the State to provide
food to the residents at the TDF.  The Court disagrees.  Defendant
Dredge's employer, Aramark, voluntarily assumed the obligation to
fulfill an essential state function, therefore, Defendant Dredge is a
state actor for purposes of § 1983.  See Rodriguez v. Plymouth
Ambulance Serv., 577 F.3d 816, 827 (7th Cir. 2009) (voluntary
assumption by private party of state's responsibility to provide
medical care to inmates renders private party a state actor); Smego
v. Aramark Food Servs. Corp., 2013 WL 1987262, at *6 (C.D. Ill.

May 13, 2013) (rejecting the same argument from this same

defendant).

## IV.   Qualified Immunity

Defendants assert the defense of qualified immunity.  For

Plaintiff's RLUIPA claims, injunctive relief is the only remedy

available to a successful plaintiff, and, therefore, the Defendants

are not entitled to qualified immunity.  <u>Hannemann v. S. Door Cnty.</u>

<u>Sch. Dist.</u>, 673 F.3d 746, 758 (7th Cir. 2012) ("[T]he defense of

qualified immunity does not protect defendants from an action for

injunctive relief."); <u>see</u> <u>Sossamon</u>, --- U.S. at ---, 131 S. Ct. at 1663

(holding that States do not consent to waive their sovereign

immunity to private suits for money damages under RLUIPA);

<u>Nelson</u>, 570 F.3d at 889 (damages not available under RLUIPA

against defendants in their individual capacities).

Because Plaintiff has a viable claim for injunctive relief against

the remaining defendants, any grant of qualified immunity on

Plaintiff's § 1983 claims at this point would not warrant dismissal

from the suit.  Thus, there is not the usual urgency to decide the

issue immediately.  "As a practical matter it is the time consumed

in litigation rather than the judgment, if any, issued at the end that

makes suits against public officers a burden warranting immunity."

<u>Hunafa</u>, 907 F.2d at 48.  Given that Plaintiff's claims will proceed

regardless, and that a more complete record would be helpful in

making this determination, the issue of qualified immunity need not

be resolved at the earliest opportunity.  <u>Id</u>. at 49.  Therefore, the

Court reserves this issue until the record is more developed.

### V.    Conclusion

For the reasons discussed above, genuine issues of material

fact exist with regards to whether the Defendants' denial of

Plaintiff's request for a religious diet violates Plaintiff's rights as

enumerated under the Religious Land Use and Institutionalized

Persons Act and the First Amendment.  Therefore, the Defendants'

motions for summary judgment are denied.

**IT IS THEREFORE ORDERED that:**

**1) Defendant Dredge's Motion for Summary Judgment [26] is DENIED.  Defendants Scott, Billingsley, Blaesing, Houzenga, and Winters Motion for Summary Judgment [28] is GRANTED in part, and DENIED in part. Defendants' Motion [28] is GRANTED in full as to Defendant Winters, and DENIED as to all other Defendants.  Clerk is directed to dismiss Defendant Winters with prejudice.  Defendant Scott is dismissed with regard to Plaintiff's First Amendment Claims.**

2) A final pretrial conference is scheduled for
   __January 20, 2016 at 1:30 p.m.__ .  The Plaintiff
   shall appear by video conference and the Defendants'
   attorney(s) shall appear in person before the court
   sitting in Springfield, Illinois. The clerk is to issue a
   writ for the Plaintiff's participation in the video
   conference.

3) The Court will send out proposed jury instructions and
   intends to ask the standard voir dire questions
   published on the Court's website
   (ilcd.uscourts.gov/local rules and orders/orders and
   rules by Judge/Judge Myerscough/General Voir Dire
   Procedure).  By__December 16, 2015____, the parties
   shall file:  1) an agreed proposed pretrial order; 2)
   alternate or additional jury instructions (no duplicates);
   3) motions in limine; and, (4) additional voir dire
   questions (not duplicative of the Court's).  All proposed
   instructions shall be clearly marked, identifying the
   party, the number, and whether the instruction is
   additional or alternate (i.e., Pl.'s 1, additional; Pl.'s 2,
   alternate to Court's 3).

4) The Plaintiff and Defendants shall appear in person at
   trial.  Residents of Rushville Treatment and Detention
   Facility who are not parties to this case shall appear by
   video conference and Rushville TDF employees who are
   not parties may also appear by video conference at trial.
   Other nonparty witnesses may appear by video at the
   court's discretion.  Therefore, the proposed pretrial
   order must include: (1) the name, resident number and
   place of incarceration for each inmate to be called as a
   witness; (2) the name and place of employment for each
   Department of Human Services employee to be called as
   a witness; and, (3) the names and addresses of any
   witnesses who are not residents or employees for whom
   a party seeks a trial subpoena.  The party seeking the
   subpoena must provide the necessary witness and

**mileage fees pursuant to Federal Rule of Civil Procedure 45.**

5) **A jury trial is scheduled for ____February 9, 2016____ at 9:00 a.m. at the U.S. Courthouse in Springfield, Illinois. No writs to issue at this time.**

ENTERED:      September 15, 2015

FOR THE COURT:

                    *s/Sue E. Myerscough*
_____
            SUE E. MYERSCOUGH
        UNITED STATES DISTRICT JUDGE